**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE FABRICSHIELD, LLC,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **RENE SCHLEICHER CO., RENE'S** | : | |
| **FABRIC ARMOR; RENE T.** | : | |
| **SCHLEICHER, and MATTHEW D.** | : | |
| **SCHLEICHER,** | : | |
| *Defendants* | : | **No. 23-2630** |

## MEMORANDUM

PRATTER, J.                                                                                    FEBRUARY 9, 2024

Renowned American author Ernest Hemingway used a writing technique known as the iceberg theory, or the theory of omission. "[T]he iceberg theory is a minimalistic style of writing in which the writer focuses on the surface elements of the story—the tip of the iceberg—without going into detail about the underlying themes, the rest of the iceberg submerged in the ocean." Gerald Lebovits, Thoughts on Legal Writing from the Greatest of Them All: Ernest Hemingway, 93 N.Y. St. Bar J. 70, 71 (2021).

On the surface of this matter is a corporate dispute between two furniture cleaning and protection services companies regarding trade secrets, Lanham Act violations, and a host of state law business and contract violations. The FabricShield alleges that Rene's Fabric Armor and the individual defendants previously employed at The FabricShield misappropriated The FabricShield's trade secrets and marks to start their own company. The FabricShield alleges that these actions have depleted The FabricShield of its business.

However, a closer look shows a much larger iceberg than what initially appears. Rene Schleicher and her husband Scott Schleicher had founded The FabricShield together in 2018. The business grew, but in December 2022, the couple separated, and Ms. Schleicher subsequently filed for divorce in the Court of Common Pleas in Chester County. She left The FabricShield approximately six months later. Before this litigation began, the Schleichers were engaged in bitter divorce proceedings, which have now migrated into this Court. The FabricShield seems to be a key asset to be distributed in that divorce.

This Court is not family court, and it will not usurp that vital role from the Commonwealth of Pennsylvania. Looking below the surface of a commercial dispute, the Court sees a massive iceberg known as the Schleicher Divorce. The Court will not deliberately steer the ship into that iceberg and instead abstains under the *Younger* abstention doctrine.

## BACKGROUND

### I.     Surface-Level Corporate Dispute

Rene and Scott Schleicher started The FabricShield in March 2018 as equal business members; in May 2020, Mr. and Ms. Schleicher's son Matthew joined the business as a full-time employee and service technician. The FabricShield "is a domestic services company that utilizes a private label formula to clean and protect fine home furnishings, textiles, area rugs, carpets, runners[,] and draperies." The FabricShield serves the Pennsylvania market, as well as markets in New Jersey; New York City; Delaware; Maryland; Washington, D.C.; Virginia; North Carolina; and South Carolina.

The FabricShield argues that it has devoted substantial time and money to develop confidential information about its vendors and suppliers, which includes unique pricing agreements, profits and loss models, implementation of customer-specific projects, and follow-up services to repeat customers. The FabricShield also argues that it has devoted significant time and

resources to cultivating long-term relationships with designers and architects, to obtaining customers, and to learning "specialized needs and preferences" of its customers. The FabricShield avers that it has kept such information private and confidential through "HouseCall Pro," which is "The FabricShield's confidential Customer Relationship Management System ('CRM System')."

On June 21, 2023, Ms. Schleicher resigned from The FabricShield, effective June 30, 2023. The FabricShield avers that Ms. Schleicher "took the company laptop, cell phone, and the login credentials to the company's website and her company email" and also "intentionally and deliberately wiped and/or deleted the entire email history, including five years' worth of The FabricShield's contact information and history of correspondence with its vendors, suppliers, partners, referring interior decorators and architects, and former, current, and prospective customers." After Ms. Schleicher announced her resignation, all of The FabricShield's partners and employees resigned.

On June 30, 2023, Ms. Schleicher announced formation of her new company: Rene's Fabric Armor. That company also offers textile protection and upholstery service. The FabricShield alleges that Ms. Schleicher used company funds from The FabricShield to purchase supplies and/or equipment that she is now using for Rene's Fabric Armor.

Prior to Ms. Schleicher leaving the company in June 2023, in 2022, The FabricShield completed 810 jobs and earned over $780,000 in annual revenue. From June 21, 2023 until June 30, 2023, according to The FabricShield, it completed just 10 jobs and earned $4,857 in revenue, but had earned $33,103 and completed 26 jobs in the same period the year before. In December 2023, The FabricShield was no longer generating any revenue, and the business account was depleted.

In light of these circumstances, The FabricShield sued Ms. Schleicher, Matthew Schleicher, and Rene's Fabric Armor[1] for misappropriation of trade secrets, Lanham Act violations, and a host of state claims, including tortious interference with a business relationship, unjust enrichment, and breach of the duty of loyalty. The defendants filed a motion to dismiss the federal trade secret and Lanham Act claims and also argued that the Court should abstain from hearing the action and decline supplemental jurisdiction over the state court claims. Approximately two months after filing its initial complaint, The FabricShield filed a motion for a preliminary injunction. After a number of discovery disputes, the Court heard oral argument on the pending motion to dismiss on October 12, 2023. The Court then ordered the parties to submit briefing solely on the issue of the suitability of abstention under *Younger v. Harris*, 401 U.S. 37 (1971), and/or *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

## II.   Below-the-Surface Divorce Proceedings

On December 9, 2022, Mr. and Ms. Schleicher separated, and Ms. Schleicher subsequently filed for divorce in the Court of Common Pleas in Chester County, Pennsylvania. About a month later, an equitable distribution hearing officer was appointed in the divorce proceedings. That day, Mr. Schleicher filed an "Emergency Petition for Special Injunctive Relief," alleging that the couple acquired assets that included "business enterprises." Mr. Schleicher's Emergency Petition alleged that Ms. Schleicher was "dissipating the marital estate" when she withdrew funds from The FabricShield's operating accounts for personal use.

On February 6, 2023, Ms. Schleicher filed a petition for injunctive relief, arguing that Mr. Schleicher was in fact the culprit of misdeeds at The FabricShield. She alleged that Mr. Schleicher

---

[1]      The FabricShield also named Rene Schleicher Co. as a defendant because Ms. Schleicher had registered that entity with the Pennsylvania Secretary of State. Because the Complaint and operative motions make little reference to Rene Schleicher Co. and instead only focus on the individual defendants and Rene's Fabric Armor, Rene's Fabric Armor is the corporate entity most at issue here.

harassed customers for payment, berated business partners, and used The FabricShield funds for personal use. During a hearing on these petitions, Mr. Schleicher admitted that he went to a customer's house unannounced to demand payment, that he instructed business partners not to "try and fabricate any bullshit with me," and wrote to one of those business partners in the same communication, "You can check my math, if you have the ability." In characterizing Mr. Schleicher's communication and actions, the judge presiding over the hearing stated, in part, "[t]he language that you used, the bullying tactics were so inappropriate." Mr. Schleicher's attorney also stated that The FabricShield was "going to be one of, if not the most valuable piece to the equitable distribution [of marital property] puzzle for this matter."

Mr. and Ms. Schleicher were to attend a settlement conference in the divorce proceedings in May 2023 that was continued to mid-August. Mr. Schleicher's settlement conference memorandum in anticipation of that conference stated that The FabricShield was "the largest asset of the estate[.]" That conference was continued and rescheduled for November, and then continued yet again when Ms. Schleicher requested another continuance because of the pendency of this federal action and because Mr. Schleicher advised her that he would not "negotiate a settlement . . . until he secures his business evaluation of The FabricShield, LLC[.]"

## LEGAL STANDARD

"To promote comity between the national and state governments, *Younger* requires federal courts to abstain from deciding cases that would interfere with certain ongoing state proceedings." *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886, 890 (3d Cir. 2022) (quoting *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 461 (3d Cir. 2019)). Although the Supreme Court has narrowed abstention doctrines, including *Younger*, because they "conflict[] with federal courts' 'virtually unflagging' obligation to exercise their jurisdiction[,]'" the Supreme Court has recognized three areas where *Younger* abstention applies. *Id.* at 891-92 (alteration in original)

(quoting *Malhan*, 938 F.3d at 462). That is, "*Younger* extends . . . no further than" the following "exceptional circumstances": "(1) 'state criminal prosecutions'; (2) 'civil enforcement proceedings'; and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Id.* (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)). As a policy matter, *Younger* abstention:

> gives the court discretion to abstain from exercising jurisdiction where appropriate '(1) to promote comity, a proper respect for state functions, by restricting federal courts from interfering with ongoing state judicial proceedings and (2) to restrain equity jurisdiction from operating when state courts provide adequate legal remedies for constitutional claims and there is no risk of irreparable harm.'

*Rufo v. Fox*, No. 21-2861, 2021 WL 5399912, at *4 (E.D. Pa. Nov. 18, 2021) (quoting *PDX North, Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020)). The *Younger* abstention doctrine applies only "when certain types of state proceedings are ongoing at the time a federal case is commenced." *Id.* (quoting *PDX North*, 978 F.3d at 882).

"[D]omestic relations are preeminently matters of state law[.]" *Mansell v. Mansell*, 490 U.S. 581, 587 (1989). The subject "of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States[.]" *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (quoting *Ex parte Burrus*, 136 U.S. 586, 593-94 (1890)). What has become known as the "domestic relations exception" "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Id.* And abstention principles may be warranted in a case involving divorce "if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties." *Id.* at 706.

DISCUSSION

## I.   *Younger* Abstention Analysis[2]

At the outset, the Court is mindful that it has a "virtually unflagging" obligation to hear and decide a case, *Sprint*, 571 U.S. at 77, and it does not decide to abstain lightly. Indeed, the Court recognizes that abstention for "state civil proceedings involving orders in furtherance of the state courts' judicial function" "has been applied only to a few exceptional types of cases[,] . . . such as child custody proceedings, civil contempt orders, and requirements for posting bonds pending appeal." *Godfrey v. Upland Borough*, 246 F. Supp. 3d 1078, 1094 (E.D. Pa. 2017).

At the same time, the Court must "recognize[] states' important interests in 'administering certain aspects of their judicial systems' and 'enforcing the orders and judgments of their courts.'" *Rufo*, 2021 WL 5399912, at *5 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12-13 (1987)). In this matter specifically, the state's interest is clear: coming to a final resolution of the divorce between the Schleichers, and there is no doubt that The FabricShield is part and parcel of the divorce both as to a bone of contention and as a tool for resolution.

"Three requirements must be met before *Younger* abstention is appropriate[.]" *Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005). "(1) [T]here must be an ongoing state judicial proceeding to which the federal plaintiff is a party and with which the federal proceeding will interfere, (2) the state proceedings must implicate important state interests, and (3) the state proceedings must afford an adequate opportunity to raise the claims." *Id.* (citing *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 843 (3d Cir. 1996)). The FabricShield focuses its argument on the first and third prongs of the *Younger* abstention test as outlined in *Yang*.

---

[2]   Although the Court ordered the parties to submit briefing on the *Younger* and *Colorado River* doctrines, the Court finds that abstention is warranted on *Younger* grounds alone. Therefore, the Court foregoes abstention analysis under the *Colorado River* doctrine.

**A.  Whether There is an Ongoing State Proceeding to Which The FabricShield is a Party and With Which This Proceeding Will Interfere**

A court abstains under *Younger* where the state proceeding is "ongoing at the time [the] federal case is commenced." *Rufo*, 2021 WL 5399912, at *4 (quoting *PDX North*, 978 F.3d at 882). There is no doubt here that the divorce proceeding preceded the federal case. Ms. Schleicher filed her Complaint in Divorce in the Court of Common Pleas of Chester County, Pennsylvania, on December 21, 2022. Pl.'s Supp. Br. On Issue of Abstention, Ex. A, Doc. No. 40-1 ("Pl.'s Supp. Br."). The FabricShield filed its complaint here on July 10, 2023, approximately seven months after the divorce proceeding commenced. Compl., Doc. No. 1. The divorce is still not finalized. *See* Pl.'s Supp. Br., at 2 (noting continuance of divorce settlement conference to February 29, 2024). Thus, there is an ongoing state proceeding. The Court turns to the other elements of the first prong of the *Younger* abstention doctrine analysis.

**1.  The FabricShield as a Party to the Divorce – Piercing the Corporate Veil**

According to The FabricShield, the first prong is not met because The FabricShield is not a party to the divorce proceedings, nor is Matthew Schleicher, Rene Schleicher Company, or Rene's Fabric Armor. Although it is true that Matthew Schleicher and none of the corporate defendants are "parties" to the divorce proceeding, the first prong of *Yang* clearly states that the proper analysis is whether "*the federal plaintiff* is a party" to the ongoing state judicial proceeding, not whether *all parties* are part of the state proceeding. *See Yang*, 416 F.3d at 202 (emphasis added).

On paper, The FabricShield is not a party to the divorce proceedings, and Mr. Schleicher is not a plaintiff in this case. The Court must look beneath the surface, however, and determine whether Mr. Schleicher and The FabricShield are one and the same. The requisite analysis to pierce the corporate veil, or apply the alter ego doctrine, provides a roadmap to make that determination.

"The 'classical' piercing of the corporate veil is an equitable remedy whereby a court disregards the existence of the corporation to make the corporation's individual principals and their personal assets liable for the debts of the corporation." *Trustees of Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 192 (3d Cir. 2003) (quoting *In re Blatstein*, 192 F.3d 88, 100 (3d Cir. 1999)). A court considers the following factors when deciding whether to pierce the corporate veil:

> [G]ross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder.

*Id.* at 194 (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484-85 (3d Cir. 2001)).

At the same time, "a court may 'pierce the corporate veil in extraordinary circumstances, such as when the corporate form is being used for wrongful purposes,' and may exercise jurisdiction over the individual." *Aldmyr Syst., Inc. v. Friedman*, 215 F. Supp. 3d 440, 465 (D. Md. 2016) (internal quotation marks omitted) (quoting *Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572, 587 (4th Cir. 2015)). In other words, "specific, unusual circumstances" must be present. *Am. Bell Inc. v. Fed'n of Tel. Workers of Pennsylvania*, 736 F.2d 879, 886 (3d Cir. 1984) (citation omitted). "[T]he situation 'must present an element of injustice or fundamental unfairness,' but a number of [the above] factors can be sufficient to show such unfairness." *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981) (citation omitted).

Here, these factors weigh in favor of piercing the corporate veil and finding that The FabricShield is the alter ego of Scott Schleicher in this litigation. For example, as of December 2023, The FabricShield is not only grossly undercapitalized but has no capital whatsoever and is thus an insolvent entity. As Mr. Schleicher's divorce attorney averred in those proceedings, "The

9

FabricShield is no longer generating any revenue." Def.'s Supp. Br. In Supp. Mot. Dismiss, Ex. M., Doc. No. 39-13 ("Def.'s Supp. Br."). The company's bank account has also been depleted. *Id.* These facts weigh in favor of piercing the corporate veil because they show that The FabricShield is now a shell of an entity with a bank account total of zero that really is functioning as an individual mechanism by which Mr. Schleicher could bring his divorce case into federal court.

Next, the divorce proceedings make clear that The FabricShield is no longer observing corporate formalities. "Of particular relevance to this inquiry are whether adequate corporate records were kept, directors and shareholders met regularly, and corporate directors and officers functioned properly." *United States v. Gold Acres, Inc.*, 702 F. Supp. 1097, 1105 (D. Del. 1988) (citing *Pisani*, 646 F.2d at 88).

Here, the way in which Mr. Schleicher, as a corporate officer, handled customer payments demonstrates a lack of corporate formalities. In collecting payments from customers, Mr. Schleicher admitted that he showed up unannounced to a customer's house. *Id.*, Ex. G, at 32:21-22, Doc. No. 39-6. Mr. Schleicher also wrote e-mails to business partners calling them "pathetic" and telling them not to "try and fabricate any bullshit with me." *Id.* at 48:21-22, 49:19-20. The judge in the divorce proceedings even recognized the lack of corporate formalities and business professionalism in this regard when he admonished Mr. Schleicher by telling him that his behavior was "wholly inappropriate." *Id.* at 126:24-25. That judge also specifically told Mr. Schleicher the proper corporate formalities to take in that situation:

> We have a thing called a court system. So if you send a demand letter or maybe one or two or maybe even three demand letters, the last one says if you don't pay we'll be forced to go to small claims court and take this up legally. You don't go to somebody's house. You just don't.

*Id.* at 126:24-127:5. Mr. Schleicher's actions in this context demonstrate that he has subsumed the character of The FabricShield by shedding the shackles of corporate formalities. Thus, this factor also weighs in favor of piercing the corporate veil.

Mr. Schleicher also made some questionable business decisions using the company's funds that may indicate a siphoning of such funds. For example, Mr. Schleicher used company funds from The FabricShield to pay for Bumble, a dating app. Def.'s Supp. Br., Ex. F, at 57:4-24. Mr. Schleicher also used company funds to pay for a personal dinner at a restaurant. *See id.* at 117:19-22. And although Mr. Schleicher later repaid both of these expenses from his personal funds, *id.*, it begs the question as to why Mr. Schleicher was using company funds for these items in the first instance. Even the judge presiding over the hearing that discussed these transactions stated, "[a]nd there will be no more, you know, for restaurants, for apps, for lawyer fees, for – I haven't figured out what else was a problem." *Id.* at 130:10-12. Such actions lend credence to the fact that Mr. Schleicher, at some point, would use company funds for his own personal expenses.

There is also evidence that Mr. Schleicher did not properly consider The FabricShield's expenses. The FabricShield avers in the Complaint that Mr. Schleicher oversaw "the back-end of the business" that included financial management. Compl. ¶ 33. In the divorce proceeding, however, Mr. Schleicher claimed that Ms. Schleicher used company funds for lease payments towards a Tesla automobile. Def.'s Supp. Br., at 3. In evaluating that claim, the judge was "dumbfounded that Mr. Schleicher didn't remember that the Tesla was a business expense." *Id.*, Ex. F, at 125:19-20. The judge then remarked that this was "head-slappingly surprising to me for a bean counter like [Mr. Schleicher]." *Id.* at 125:21-22. This interaction suggests that Mr. Schleicher professed not to be acutely aware of The FabricShield's finances when he was in charge of the company's financial management.

Further, when Mr. Schleicher's attorney notified Ms. Schleicher that The FabricShield no longer generated any revenue, Mr. Schleicher concurrently filed a petition seeking alimony because he could no longer pay his mortgage and attorney's fees. Pl.'s Supp. Br., Ex. M & N. Taken together, this implies that Mr. Schleicher, at least to some extent, was using The FabricShield's funds for his mortgage and other expenses, and when that money ran dry, Mr. Schleicher filed a petition seeking alimony. Mr. Schleicher has also not indicated that he had any other source of income. *See id.* Because this only suggests a siphoning of funds and does not concretely demonstrate as such, though Mr. Schleicher did use company funds for personal expenses that were later repaid, this factor is neutral at best.

Next, the Court evaluates whether The FabricShield is merely a façade for the operations of Mr. Schleicher.[3] Mr. Schleicher's settlement conference memorandum in the divorce proceedings contains decidedly similar allegations as The FabricShield makes in its amended complaint. For example, both filings detail the aftermath of Ms. Schleicher leaving The FabricShield. *Compare* Pl.'s Supp. Br., Ex. J, at 5, Doc. No. 39-10 ("Since Wife left the company, business has fallen off dramatically. Husband avers that Wife delayed jobs and diverted FabricShield business to her new company.") *with* Compl. ¶¶ 50, 70 ("Following [Ms. Schleicher's] abrupt resignation, The FabricShield's jobs and revenue inexplicably and immediately plummeted." . . . "[Ms. Schleicher] usurped The FabricShield's business

---

[3]    The parties do not point to any information pertaining to nonpayment of dividends, nonfunctioning of officers and directors, or absence of corporate records. However, there do not appear to be any officers or directors at The FabricShield other than Mr. Schleicher. Indeed, if Ms. Schleicher were in fact still an officer of the company when she was at one time an equal business partner, it seems odd that she would act on behalf of the company to sue herself.

In any event, because these issues have not been fully presented to the Court and where the Court finds the other factors satisfactory for corporate veil analysis purposes, the Court does not analyze these factors. *See Lutyk*, 332 F.3d at 194 (holding that the Court of Appeals for the Third Circuit has never characterized the factors "as elements of a rigid test").

opportunities and customers who had requested service from The FabricShield . . . and intentionally and willfully diverted The FabricShield's customers to Rene's Fabric Armor[.]"). The similarities do not end there, for there are other striking examples where Mr. Schleicher's settlement conference memorandum and The FabricShield's filings are nearly identical. *Compare, e.g.,* Pl.'s Supp. Br., Ex. J, at 5, Doc. No. 39-10 ("As a result of Wife's actions, [T]he FabricShield has been reduced to the verge of bankruptcy and rendering the business close to insolvent.") *with* Mot. to Expedite Discovery, at 4, Doc. No. 3-1 ("Defendants' continued unlawful conduct and unfair competition will cause irreparable harm to The FabricShield and put the once-profitable company out of business in a matter of weeks.").

At this stage, the Court must conclude that The FabricShield and Mr. Schleicher are one and the same. Because there is little, if any, discernable difference between the two parties, for purposes of this prong of the *Younger* abstention inquiry, The FabricShield and Scott Schleicher are the same.

### 2. The Federal Proceeding Will Interfere With the Divorce

It is abundantly clear that the continuation of this federal litigation will interfere with the divorce proceeding. In fact, this litigation already has materially interfered with that proceeding. Ms. Schleicher filed a motion for continuance in the divorce proceeding regarding a divorce settlement conference in part because "the equitable distribution [of The FabricShield] cannot be resolved until [the federal] matter is resolved." Pl.'s Supp. Br., Ex. L, at 2, Doc. No. 39-12. That continuance was granted and delayed the divorce settlement conference from November 3, 2023 until February 29, 2024. *Id.* at 3. Mr. Schleicher himself claimed The FabricShield to be "[b]y far, the largest asset of the estate." Def.'s Supp. Bf., Ex. J, at 3, Doc. No. 39-10. Mr. Schleicher's attorney also stated that The FabricShield "is going to be one of, if not the most valuable piece to the equitable distribution puzzle for this matter [the divorce]." Def.'s Supp. Br., Ex. G, at 118:23-

25, Doc. No. 39-7. Each of these examples shows the paramount importance of The FabricShield, the purported plaintiff in this federal matter, to the divorce proceeding.

In the federal case, The FabricShield filed a motion for a preliminary injunction and a complaint seeking damages for a wide array of claims. No matter how this Court or a potential jury decides those issues, the outcomes would have monumental effects on an asset that is part and parcel of the Schleicher divorce. But the real worry here is not necessarily how the resolution of this case would affect the divorce but rather the fact that this federal litigation apparently continues to be used to delay the divorce proceedings. Summary judgment motions in this case are not due until April 12, 2024, and the case has a scheduled trial pool date that does not take place until June 4, 2024. Deciding summary judgment or a jury deciding this trial are months away, and as events that have already transpired suggest, continuing this litigation would likely delay the divorce proceedings by the same amount of time.

The FabricShield argues that these are two completely different cases where The "FabricShield does not seek to alter the eventual equitable distribution scheme or to have this Court divide the marital property" but rather "seeks damages because of Defendants' tortious acts related to [The] FabricShield's business." Although this is a clear surface-level reading of the types of relief sought in each case, *how* this Court determines the instant action will have significant ramifications for the divorce proceeding. More importantly, however, the continued litigation of this case would impair not only the final resolution of the divorce proceedings but also *reaching* a final resolution in those proceedings. That is why this Court must look below the surface and see that The FabricShield in this litigation *would* alter the equitable distribution scheme and *when* that scheme would be set. Thus, because federal litigation would prolong the divorce proceedings well into the summer, the Court finds that the first prong of the *Younger* abstention test is satisfied.

**B.  Whether the State Proceedings Implicate Important State Interests**

The Schleichers' divorce proceedings implicate the important state interest of carrying out the final resolution of the dissolution of the Schleichers' marriage. This has been recognized as such an important state interest that it has resulted in the "domestic relations exception" that divests the federal courts of the power to even issue a divorce. *See Reid v. Luna*, No. 23-4818, 2023 WL 8720666, at *1 (E.D. Pa. Dec. 18, 2023) (citing *Ankenbrandt*, 504 U.S. at 703). This is in part because "[f]amily relations are a traditional area of state concern." *Moore v. Sims*, 442 U.S. 415, 435 (1979). And "[d]omestic relations cases are traditionally matters within the exclusive purview of state, not federal, courts." *Aldmyr*, 215 F. Supp. 3d at 454.

Indeed, in Pennsylvania, a state court "may grant a divorce where it is alleged that the marriage is irretrievably broken." 23 Pa. Cons. Stat. § 3301(c)(1). And a state court has the power to "equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors." *Id.* § 3502(a).

Here, the divorce proceedings implicate the important state interest of carrying out the state divorce statutes such that the Schleicher marriage can be dissolved. The divorce proceedings are necessary to allocate the equitable distribution of marital property, of which The FabricShield is the "most valuable piece" of the puzzle. There is no doubt that this is an important state interest when federal courts lack the power to effectuate a divorce decree. *See Ankenbrandt*, 504 U.S. at 693 ("[T]he federal courts have no jurisdiction over suits for divorce."). Thus, this second factor also weighs in favor of abstaining under the *Younger* doctrine.

### C. Whether the State Proceedings Afford an Adequate Opportunity to Raise the Claims

"[T]he burden on this point rests on the federal plaintiff to show 'that state procedural law bar[s] presentation of [its] claims." *Pennzoil*, 481 U.S. at 14 (quoting *Moore*, 442 U.S. at 432). On this point, The FabricShield argues that the divorce proceedings do not provide an adequate opportunity "to raise its federal claims for trade secret misappropriation under the [Defend Trade Secrets Act] or the Lanham Act" because "these claims are federal in nature and thus qualify for federal question jurisdiction."

However, Mr. Schleicher's own conduct and arguments in the divorce proceedings undermine this very argument in the federal litigation because, as discussed above, Mr. Schleicher has raised many of the same arguments in this case throughout the divorce proceedings. For example, again in Mr. Schleicher's settlement conference memorandum, he wrote that "[i]n early June 2023, *as part of the divorce process*, Wife engaged in bad-faith settlement discussions to have Husband buy out Wife's share of the business, but she refused to agree to a non-compete provision. Husband has now learned that . . . [Ms. Schleicher] was secretly plotting to start her own competitive fabric protection company to compete against The FabricShield and take its clients." Pl.'s Supp. Brief, Ex. J, at 2, Doc. No. 39-10 (emphasis added). This allegation is at the core of The FabricShield's allegations in this Court. *See* Compl. ¶ 121 ("Defendants have utilized and are continuing to utilize The FabricShield's confidential, proprietary and trade secret information to remove or divert The FabricShield's business to Rene's Fabric Armor. In doing so, Defendants are maliciously and willfully using misappropriated confidential, proprietary, and trade secret information to their own advantage in direct competition with The FabricShield."). Because Mr. Schleicher himself brought the same allegations forward as part of his settlement conference memorandum, it must follow that Mr. Schleicher believes the court in that proceeding could

determine the allocation of The FabricShield for purposes of the divorce with that information

such that it could handle the claims he makes. Indeed, the divorce court will equitably distribute

the marital property "after considering all relevant factors," which includes Mr. Schleicher's

claims here, which also demonstrates that the divorce court can properly consider these claims for

its equitable distribution of The FabricShield. 23 Pa. Cons. Stat. § 3502.

The divorce court has also already heard matters related to the *business* of The

FabricShield. Ms. Schleicher filed a petition for special injunctive relief regarding The

FabricShield where she alleged that Mr. Schleicher was "dissipat[ing] the marital asset known as

The FabricShield by being verbally aggressive in his communication" with Ms. Schleicher,

vendors, and customers. The divorce court heard an argument on that petition where the "focus"

was The FabricShield. Pl.'s Supp. Br., Ex. G, at 123:18-20, Doc. No. 39-7. The divorce court then

discussed issuing an order pertaining to how Mr. Schleicher and The FabricShield would interact

with customers in "a business-worthy manner." *Id.* at 128:18-24. This all demonstrates that the

divorce court has heard the same types of issues that The FabricShield, through Mr. Schleicher,

have brought in the federal case. They all concern the same machinations of the company, its

business, and its operations. The divorce court can resolve the federal claims through the equitable

distribution of The FabricShield while taking into account the actions of both Ms. Schleicher and

her companies and Mr. Schleicher.

### D.  Other Considerations

The cases on which The FabricShield relies in its supplemental briefing do not provide a

convincing showing that *Younger* abstention is not warranted.[4] The FabricShield first relies on

---

[4]     Although The FabricShield relies on the cases discussed in this section in its argument related to
*Colorado River* abstention, the plaintiff alludes to its reliance on that analysis for its arguments pertaining
to *Younger* abstention. *See* Def.'s Supp. Br., at 8, Doc. No. 40 (arguing that *Younger* abstention is not

*Bell v. Bell*, No. 95 MDA 2023, 2023 WL 5542788 (Pa. Super. Ct. Aug. 29, 2023) (unpublished). In *Bell*, Rian Bell and Holly Bell were a married couple involved in a divorce proceeding where Mr. and Ms. Bell each owned 50% of Simply Country, LLC. *Id.* at *1. Ms. Bell formed a new company with someone she had then started dating. *Id.* Mr. Bell then filed a complaint and petition for preliminary injunction in state court against Ms. Bell and the new company for breach of fiduciary duty. *Id.* In her preliminary objections, Ms. Bell argued that those matters were solely within the province of equitable distribution as part of the divorce action. *Id.* The Pennsylvania Superior Court reversed the district court's order sustaining Ms. Bell's preliminary objections and dismissing the complaint. *Id.* at *7. The superior court reasoned that the two cases were not the same where the divorce involved equitable distribution and the case before it involved a breach of fiduciary duty. *Id.*

Although The FabricShield is correct in that there is some similarity in the fact pattern between the case here and the fact pattern in *Bell*, the two cases involved entirely separate legal standards. *Bell* concerned Ms. Bell's *preliminary objections*, where "it must be shown that the prior case is the same, the parties are the same, and the relief requested is the same." *Id.* at *5 (quoting *Richner v. McCance*, 13 A.3d 950, 958 (Pa. Super. Ct. 2011)). The standard for reviewing a preliminary objection in a Pennsylvania state court case is not the same as the standard for determining whether *Younger* abstention applies in a federal case.

For purposes of determining the disposition of *this* case, the standard is to first find whether the case falls into one of the three categories where *Younger* abstention could apply: "state criminal prosecutions[,]" "civil enforcement proceedings[,]" and "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Smith*

---

appropriate, "[a]s in the analysis set forth in detail above [pertaining to the *Colorado River* doctrine]"). Thus, the Court will consider these arguments as part of the *Younger* abstention analysis.

18

& *Wesson*, 27 F.4th at 891-92, 895. For the third category, which is at issue here, the Court then analyzes whether "(1) there [is] an ongoing state judicial proceeding to which the federal plaintiff is a party and with which the federal proceeding will interfere, (2) the state proceedings . . . implicate important state interests, and (3) the state proceedings . . . afford an adequate opportunity to raise the claims." *Yang*, 416 F.3d at 202 (quoting *FOCUS*, 75 F.3d at 843). The Court has conducted that analysis above, and the state court in *Bell* did not conduct the same analysis for the facts of that case. Thus, *Bell* is inapposite.

The FabricShield next relies on *Shearer v. Shearer*, No. 1:23-CV-01267, 2023 WL 7924865 (M.D. Pa. Nov. 16, 2023). In *Shearer*, the court found that "[n]one of the traditional abstention doctrines" applied. *Id.* at *3. That court focused its analysis on *Colorado River* abstention. *Id.* at *3-4. At the same time, the court briefly mentioned *Younger* abstention as being appropriate only for state criminal proceedings. *Id.* at *3. That court first held that *Younger* abstention could apply where "federal jurisdiction has been invoked to restraint state criminal proceedings." *Id.* (quoting *NYLife Distribs., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 376 (3d Cir. 1995)). That court then held that the case at issue did not involve "the restraint of a state criminal proceeding." *Id.*

However, that is not the correct reading of what the *Younger* abstention doctrine stands for today. Although the restraint of a state criminal prosecution was at issue in *Younger v. Harris*, the Supreme Court "ha[s] since applied *Younger* to bar federal relief in certain civil actions." *Sprint*, 571 U.S. at 77. The Supreme Court then clearly delineated the three cases detailed above in which *Younger* abstention is warranted. *See id.* at 78. This demonstrates that the *Shearer* court did not correctly characterize the types of cases for which *Younger* abstention applies. *Cf. Colahar v. Wells Fargo Bank N.A.*, 56 F. Supp. 3d 603, 606 n.3 (D. Del. 2014) ("The abstention doctrine as defined

in [*Younger*] provides that federal courts are not to interfere with pending state criminal proceedings. The *Younger* doctrine has been extended to civil cases and state administrative proceedings."). Thus, whatever limited analysis the *Shearer* court conducted regarding *Younger* abstention cannot and does not apply to this Court's analysis of *Younger* to the facts of this case.

The conduct of the parties gives additional credence to the need for this Court to abstain from hearing this case. For example, in their motion to dismiss, the defendants chose to share with the Court that Ms. Schleicher "was compelled to file for divorce due to her husband, [Mr. Schleicher]'s, physical abuse and drug use." Mem. Mot. to Dismiss, at 1, Doc. No. 9. The defendants then averred that Ms. Schleicher obtained a protection from abuse order from the state court in that case. *Id.* at 1-2. In a fashion typical of a contentious divorcing party, "The FabricShield" included the following footnote that, read in its entirety, demonstrates the true nature of this case:

> Moreover, to divert attention from her wrongdoing, [Ms. Schleicher] has launched a defamatory campaign to frame [Mr. Schleicher's] prescriptive use of anxiety medication, which has always been administered under the care of his physician, as "drug abuse." This unfortunate and shameful attempt to smear [Mr. Schleicher] is ***entirely transparent and totally irrelevant*** in this proceeding against The FabricShield.

Response Mem. Mot. to Dismiss, at 1 n.1, Doc. No. 14 (original emphasis). The Court agrees that this is "entirely transparent and totally irrelevant" to a case purportedly concerning trade secrets and Lanham Act claims, yet both parties chose to use the federal court as a forum to air their personal, matrimonial grievances. Such conduct is not lost on the Court and signifies the centrality of the Schleicher divorce to this case.

This case is also ripe for abstention where one of the defendants in this case, Ms. Schleicher, was at some point an equal member of The FabricShield and where The FabricShield is subject to equitable division in the divorce proceeding. If The FabricShield is joint property and

thus subject to both Mr. and Ms. Schleicher's control, it seems odd that Ms. Schleicher would choose to act on behalf of The FabricShield to sue herself. This dichotomy supports a finding both that Mr. Schleicher is using The FabricShield as his alter ego for purposes of this case and that *the state court* should readily determine the equitable distribution of The FabricShield in the divorce proceedings so that Mr. Schleicher does not wield the company as an instrumentality in *this* case.

Finally, this is not the first case in which litigants have come before a federal court purporting to have federal claims when the reality was something much different. In *Aldmyr Systems, Inc. v. Friedman*, Aldmyr Systems was a company with the right to distribute a copyrighted system to Zegato, Inc. 215 F. Supp. 3d 440, 445 (D. Md. 2016). Zegato and Aldmyr, the two plaintiffs in that case, alleged that the defendants took possession of the plaintiffs' copyrighted computer technology and trade secrets. *Id.* at 447. Donald Bailey owned and had a controlling interest in both companies. *Id.* at 444. At the same time, Mr. Bailey was going through a divorce with his then-wife, who was represented by her attorney Stephen A. Friedman. *Id.* at 443-44. The federal case alleged that Mr. Friedman and the defendants took the companies' proprietary information "as a bargaining chip in the negotiations with Donald Bailey's marriage counsel." *Id.* at 447. Throughout the course of a complicated and lengthy litigation process, the Baileys' divorce proceedings continued. *See id.* at 451.

However, the court looked below the surface and recognized the reality of the situation. The court opened its opinion by stating, "This case, ostensibly seeking damages for copyright infringement *under federal law* and *misappropriation of trade secrets* under state law, is in reality *an effort to wage a state-based domestic relations battle in federal court.*" *Id.* at 443 (emphasis added). The court called the federal action "for alleged copyright infringement and theft of trade secrets as nothing more than a thinly veiled, too-clever-by-half effort to gain an unfair advantage

in a state divorce proceeding." *Id.* at 454. The court there, after extensive analysis, granted the defendants' motion to dismiss and granted the defendants' motion for sanctions. *Id.* at 470.

There is a striking similarity between the two cases. In this case, Mr. Schleicher, attempting to hide under the guise of The FabricShield, has brought this case in federal court ostensibly for federal claims as an effort to either delay the divorce proceedings, seek an advantage in those proceedings, or force Ms. Schleicher to endure both *this* litigation and a prolonged version of *that* litigation. But that is not the function of the federal courts. This Court recognizes Mr. Schleicher's actions here for what they really are: a poorly cloaked sleight of hand to seek some kind of outcome in his favor affecting the divorce proceedings.[5] Thus, the Court finds that abstaining from this case under the *Younger* doctrine is warranted.

## II.    Case Resolution[6]

When *Younger* abstention applies in a case involving a quasi-criminal civil enforcement proceeding and the claims in the federal suit are only for injunctive or declaratory relief, the Court must dismiss the case. *Borowski v. Kean University*, 68 F.4th 844, 850 (3d Cir. 2023). If the suit includes a claim for damages that also seeks injunctive or declaratory relief, "a federal court has discretion not only to stay the damages claim but also to dismiss any claims for injunctive and declaratory relief outright or to stay them, potentially alongside the stayed claim for damages." *Id.*

---

[5]     This desired outcome could take any number of forms, whether to delay the divorce proceedings or to try gaining an upper hand in them. If Mr. Schleicher is using this federal litigation for other purposes, such as a tactic to create distress for Ms. Schleicher and/or their son, those actions speak for themselves. They have no place in this courtroom, or any courtroom.

[6]     The Court is mindful that there is another pending federal litigation involving The FabricShield in the Eastern District of New York. *See Fiber-Shield Indus. Inc. v. FabricShield Holdings, LLC*, 2:20-cv-6059 (2020). The fact that there is pending federal litigation in another case does not prevent the Court from abstaining here. The Court recognizes that that case may also delay the divorce proceedings, but that does not mean that the Court will impede finalizing the divorce by continued litigation in *this* case.

Although the type of case here does not fall within the "quasi-criminal civil enforcement proceeding" category of *Younger*, the Court finds the above standard instructive in determining how to decide the present case. The FabricShield seeks both injunctive relief and monetary damages. If the Schleicher marriage is irretrievably broken, then the divorce proceedings will eventually come to an end. At that point, once The FabricShield has been subject to equitable distribution, if the owner or owners of that company wish to continue proceeding in this Court, they may. To avoid any duplicative pleading requirements, should that occur, the Court will stay the instant matter. The parties may continue to update the Court regarding the divorce proceedings. Upon finalization of the divorce, if there is still a live dispute in this matter, the Court may lift the stay at that juncture. Until then, Mr. and Mrs. Schleicher should readily move towards a final resolution in the divorce proceedings.

## CONCLUSION

The dissolution of a marriage creates a unique type of stressors on the individuals going through the divorce process. It can force two individuals into an unattractive, contentious battle waged in state court. Those battles, however, should not be fought in federal court. By looking beneath the surface and seeing the full iceberg, it is clear that that is what is happening in this case. The Court hopes that Mr. and Ms. Schleicher come to a speedy and just resolution in their divorce proceedings. For that to happen, this federal case cannot continue at this juncture. Thus, the Court abstains under the *Younger* abstention doctrine and stays the case. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE